

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

02/01/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### (Charlottesville Division)

|  |  |
|---|---|
| ENTREPRENEUR MEDIA, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> VIDA GROUP LLC, a Virginia limited liability company; GERARDO JIMENEZ and TATIANA JIMENEZ, individuals; and DOES 1-10, <br><br> Defendants. | Civil Action No. 3:19CV00008 <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## NATURE OF ACTION

1.  Plaintiff Entrepreneur Media, Inc. ("EMI") brings this complaint against VIDA Group, LLC ("VIDA"), Gerardo Jimenez, Tatiana Jimenez, and Does 1-10 (collectively "Defendants") for federal trademark infringement and false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*, and EMI alleges, with knowledge concerning its own acts and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

## THE PARTIES

2.  EMI is a California corporation with its principal place of business at 18061 Fitch Avenue, Irvine, California 92614.

3.  Defendant Gerardo Jimenez is an individual residing in Virginia.

4.  Defendant Tatiana Jimenez (together, with Gerardo Jimenez, the

"Individual Defendants") is an individual residing in Virginia.

5.      Defendant VIDA Group, LLC ("VIDA") is a Virginia limited liability company with its primary place of business at 1640 Oxford Road, Charlottesville, Virginia 22903.

6.      At all relevant times, each of the Individual Defendants was, as applicable, the principal, owner, director, officer, managing member, shareholder, member, central figure, and/or the representative of VIDA, and each of the Individual Defendants authorized, approved, directed, controlled, ratified, participated in, instigated, and/or was otherwise the moving, active, central, and/or conscious force or figure behind the unlawful activity alleged herein.

7.      At all relevant times, VIDA was the alter ego of the Individual Defendants, because there is a unity of interest and ownership between them, such that their separate personalities no longer existed and any failure to disregard the corporate form would result in a fraud or injustice.

8.      Does 1-10 are persons or entities responsible in whole or in part for the wrongdoing alleged herein ("Doe Defendants").  Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts.  EMI will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

9.      At all relevant times, the Individual Defendants, VIDA, and Doe Defendants (collectively, "Defendants") acted as the principal, agent, and/or representatives of each of the other Defendants.  Any action by one of the Defendants

was within the course and scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of each of the other Defendants.

10.     Defendants conduct business in Virginia and within this District, and have used and are involved in the use of the MINDFUL ENTREPRENEUR mark.

11.     As fully detailed below, Defendants use the MINDFUL ENTREPRENEUR mark (alternatively referred to as the "Infringing Entrepreneur Mark") in such a manner that violates EMI's longstanding and strong rights in the ENTREPRENEUR® mark.

## JURISDICTION AND VENUE

12.     Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over EMI's claims for relief for violation of the Lanham Act.

13.     This Court has personal jurisdiction over Defendants because Defendants reside within the state of Virginia and within this District.

14.     Venue in this Court exists under (i) 28 U.S.C. §§ 1391(b)(1), (c)(2) as Defendants reside in this District and are subject to the Court's personal jurisdiction; and (ii) 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to EMI's claims occurred within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

## EMI and Its Successful ENTREPRENEUR® Brand

15.     For over forty years, EMI (together with its predecessor companies) has published magazines and books, which provide editorial content and other information, as well as offered products and services related, or of interest, to businesses, business

3

owners, and prospective business owners.

16.    EMI's longstanding marketing and sales efforts have been conducted

primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

17.    EMI is the publisher of ENTREPRENEUR® magazine and other

publications incorporating the ENTREPRENEUR name in their titles.

ENTREPRENEUR® magazine is published ten times per year with a current print and

digital paid circulation, including both subscriptions and single-copy sales, of more than

517,500 in the United States and worldwide.

18.    ENTREPRENEUR® magazine routinely features articles about and

interviews with some of the biggest names in the business community, including Jeff

Bezos (founder, chairman, and CEO of Amazon), Venus Williams (tennis icon), and

Sarah Michelle Gellar (actress and co-founder of startup Foodstirs):

  

19.    ENTREPRENEUR® magazine also annually publishes, and has

continuously published for over thirty years, the highly anticipated Franchise 500®

ranking of America's top franchises using EMI's top-secret formula:



20.     EMI also publishes and distributes within the United States and worldwide over 200 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR PRESS® imprint:



21.     EMI also conducts seminars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses.  These events have included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference sponsored by Canon USA, and (iii) the *Entrepreneur 360™*, a conference sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and American Airlines.

22.     EMI operates a number of websites to further disseminate and market its

content and services, including *entrepreneur.com*, *entrepreneurnetwork.com*, and various social media channels and mobile apps.

23.    The website at *entrepreneur.com* has recently averaged more than thirteen million unique users and more than thirty-three million page views per month.

24.    EMI has also launched apps for iPhones/ iPads and Android:



25.    EMI offers a variety of podcasts, including a podcast offered through *entrepreneur.com*, and a podcast under the ENTREPRENEUR mark on iTunes, as well as other outlets:



26.    EMI's fame and high-quality content and services have resulted in numerous co-branding business relationships with some of the top names in news and business.  These co-branding relationships have most recently included: (i) contests sponsored by General Motors and Canon USA; (ii) content provided and branded by

CNBC, Reuters, NFL Players Association, and Business Insider; (iii) Princeton Review (ranking top entrepreneurial schools); (iv) Great Place to Work® (annual Best Small & Medium Workplaces rankings); (v) Palo Alto Software (Entrepreneur Magazine's Business Plan Pro® software); and (vi) an online forms and documents service with SeamlessDocs.

27.     Most recently and in particular, EMI has: (i) partnered with Steve Case's *Rise of the Rest*™, a nationwide program to promote entrepreneurship in start-up ecosystems within middle America; (ii) hosted a contest with Canon USA under the rubric *Project Grow Challenge*, in which businesses were awarded money based on how they proposed to grow their businesses through increased productivity and consumer awareness; and (iii) partnered with Chivas Brothers Limited as its exclusive media content partner, in connection with and support of Chivas' annual event known as *The Venture*, a worldwide competition to discover, celebrate, and award with investment dollars extraordinary startup businesses creating positive social change.

28.     Through careful cultivation of its various products and services, EMI has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.

29.     EMI has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR Mark.  Through EMI's widespread and continuous use of the ENTREPRENEUR Mark, it has acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI.

30.     The fame and quality of the products and services bearing the ENTREPRENEUR Mark have been widely recognized through industry awards and commendations.  For example, *ENTREPRENEUR* magazine was a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious Maggie award in 2008, 2009, 2010, and 2011 from the Western Publishing Association.  EMI's website at *entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EMI has also received multiple Integrated Marketing Awards from MIN for its magazine and website, including being selected as an awards finalist in 2015.

31.     In addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business advertising.  EMI's management and staff have also been recognized for their contributions to publishing and the media industry, including such awards and recognitions in 2015 as (i) Folio's designation of an EMI staff writer as one of the "Top Women in Media," and (ii) Fast Company's recognition on Twitter of EMI's Editor-in-Chief as one of the "25 Smartest Women in Media."

### EMI's Intellectual Property Rights

32.     EMI owns, and has obtained United States federal registrations for, the ENTREPRENEUR Mark, as well as a family of related marks incorporating the term

ENTREPRENEUR, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968 August 25, 1987 |
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises 41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032 October 30, 2001 |
| ENTREPRENEUR | 38:  Streaming of video and digital material on the Internet | 4,260,948 December 18, 2012 |
| ENTREPRENEUR | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424 June 4, 2013 |
| ENTREPRENEUR | 9: Pre-recorded audio and audiovisual recordings of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, in the form of downloadable recordings 38: Streaming of audiovisual and multimedia content via the internet; transmission and delivery of audiovisual and multimedia content via the internet; | 5,256,907 August 1, 2017 |

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | video-on-demand transmission services; mobile media services in the nature of electronic transmission, wireless broadcasting and electronic delivery of audio, video and multimedia entertainment content, namely, text, data, images, audio, video, and audiovisual files provided via the internet; video broadcasting services over the internet or other communications network, namely, electronically transmitting video clips; internet broadcasting services; providing streaming of audio and video in the nature of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, namely, audio, visual, and audiovisual matter for others via global computer networks; broadcasting and transmission of analog television, digital television, cable television, satellite television, pay television, interactive television, radio, and internet programs; broadcasting of internet programs via radio and television; broadcasting of programs provided over the internet; streaming audio, video, and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks; providing video on-demand transmission of audio, video and audiovisual content, data and information; transmission of audio, video and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks. 41: Entertainment services, namely, the production, presentation, distribution and syndication of on-going television, internet and non-downloadable audio and audiovisual recordings, all of the aforementioned concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business | |

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, legal and business forms, and newsletters, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937 September 30, 2014 |
| ENTREPRENEUR PRESS | 16: Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running, and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,064 July 22, 2008 |
|  | 16:  Paper goods and printed matter, namely, books, manuals, prepared reports, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16:  Paper goods and printed matter; namely, magazines, books, booklets, and published reports pertaining to business opportunities | 3,204,899 February 6, 2007 |
| ENTREPRENEUR 360 | 16:  Annual featured issue of magazine featuring the achievements of successful non-franchise and privately-owned businesses and publications related thereto, providing information and incentive to others to pursue excellence in business pursuits by presenting awards on an annual basis, and promoting | 5,052,999 October 4, 2016 |

11

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | award recipients and providing recognition by the way of awards to demonstrate excellence in the field of business. 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information to customers in the field of starting and operating non-franchise and privately-owned businesses by means of a global computer network and other computer online service providers; advertising services, namely, providing advertising space in a magazine featuring news and information concerning the field of non-franchise and privately-owned businesses; providing statistics, ratings, and rankings and other information capable of being updated on a continuing basis through an interactive database and about businesses which are not franchises and are privately-owned. 41:  Recognizing the achievements of successful non-franchise and privately-owned businesses and providing incentive to others to pursue excellence in business pursuits by presenting a wards on an annual basis and promoting award recipients; providing recognition by the way of awards to demonstrate excellence in the field of business; arranging and conducting educational  conferences; educational services, namely, developing,  arranging, and conducting educational conferences and programs and providing courses of instruction in the field of business administration and management | |

33.    The above marks are collectively referred to as the "EMI Marks."  The

above registrations are collectively referred to as the "EMI Registrations."

34.    Several of EMI's U.S. registrations (Nos. 1,453,968; 2,263,883; 2,502,032;

4,260,948; 4,345,424; 3,470,064; 3,470,063; and 3,204,899) are incontestable pursuant to

15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as

well as EMI's entitlement to the exclusive use of the marks in commerce throughout the

United States on the goods and services listed in the registrations.

35.    Further, the EMI Registrations constitute prima facie evidence that the marks are valid, and that EMI is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

36.    EMI, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the EMI Marks, and in particular under the ENTREPRENEUR Mark.  In fact, EMI has used the ENTREPRENEUR Mark in commerce for over forty years, having first adopted that mark for magazines at least as early as May 2, 1978, and it is famous, well-known, and recognized as identifying goods and services that originate from EMI.

37.    Through careful cultivation of its goods and services provided under the EMI Marks, and in particular the ENTREPRENEUR Mark, EMI has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.  Through EMI's widespread and continuous use of its family of EMI Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EMI.

38.    Numerous courts have recognized the strength of the EMI Marks, including:

    i.    The U.S. District Court for the Central District of California held that "[t]he extensive advertising and public recognition over the past 25 years have

established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and the ENTREPRENEUR Mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, *9–10, 13 (C.D. Cal. June 23, 2004).

ii.  The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. App'x 212, 215 (9th Cir. 2004).

iii.  The U.S. District Court for the Central District of California recently adopted the holding of the district court in the *Smith* case, and once again found that "the mark ENTREPRENEUR is strong distinctive mark, deserving of significant protection" and that "EMI's ENTREPRENEUR mark is a strong mark" that was infringed by defendant's ENTREPRENEUR PODCAST mark.  *See Entrepreneur Media, Inc. v. Eric M. Dye, et al.*, No. 18-cv-0341-DOC (PLAx), Docket No. 22 (C.D. Cal., Sept. 11, 2018).

iv.  The U.S. District Court for the Central District of California has further held on two separate occasions that "the ENTREPRENEUR Mark and EMI's related marks have developed a high degree of distinctiveness and become well-known and recognized as identifying goods and services that originate from EMI." *Entrepreneur Media, Inc. v. Entrepreneurs Opportunities, LLC*, No. 17-cv-01341-JVS-KES, Docket No. 20 (C.D. Cal.,

Jan. 14, 2018); *Entrepreneur Media, Inc. v. The Innovation Initiative, et al*, No. 17-cv-2261-JVS-KES, Docket No. 23 (C.D. Cal., August 2, 2018) (finding the same); *see also Entrepreneur Media, Inc. v. Darren Casey*, No. 18-cv-01058-JLS-AGR, Docket No. 20 (C.D. Cal., December 20, 2018) (recognizing that EMI's marks are protectable and have been used for over forty years).  These courts also held that EMI's rights were violated by, respectively, the ENTREPRENEUR OPPORTUNITIES mark, the ENTREPRENEUR TV mark, and the FIT ENTREPRENEUR MAGAZINE mark.

v.   The U.S. District Court for the District of Colorado held that "the EMI Marks, and in particular the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known, famous, and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection."  *Entrepreneur Media, Inc. v. Spencer et al.*, No. 1:17-cv-01637-RBJ, Docket No. 20, at pg. 8 (D. Colo. Dec. 15, 2017) (also finding that EMI's rights were violated by the ENTREPRENEUR SUPPORT mark).

vi.   The U.S. District Court for the District of Connecticut has recognized that "the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying

goods and services that originate from EMI, such that they are deserving of strong protection." *Entrepreneur Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19 (D. Conn. Aug. 19, 2015) (also finding that EMI's rights were violated by the ENTREPRENEUR WEEK mark).

vii.   The U.S. District Court for the District of Maryland has twice recognized the EMI Marks as valid, strong, and distinctive. *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al.*, No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *id.*, Docket No. 47 (Apr. 7, 2014) (also finding that EMI's rights were violated by the ENTREPRENEURS EDGE mark).

viii.  Both a Magistrate Judge and District Court Judge in the Eastern District of Virginia found the ENTREPRENEUR Mark to be distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011) (also finding that EMI's rights were violated by the registration of the *seattleentrepreneur.com* and *austinentrepreneur.com* domain names).

### Defendants' Unauthorized Use of EMI's Marks

39.   Defendants own the *www.methriving.com* domain name and operate a website there using the MINDFUL ENTREPRENEUR mark.

40.   Defendants provide a variety of services under the MINDFUL ENTREPRENEUR mark, including one-on-one coaching services for business owners, as well as a podcast featuring interviews with "leading change makers, thought-leaders and entrepreneurs" to discuss lessons learned and how to enjoy long-term success as an

entrepreneur and business owner.

41.     Defendants advertise their services under the MINDFUL
ENTREPRENEUR mark on various social media platforms, such as YouTube
(*https://www.youtube.com/channel/UC9tyr2j9Zao-EyCeOE-oNLA*) and iTunes
(*https://itunes.apple.com/us/podcast/mindful-entrepreneur/id1247340670?mt=2*) (the
"Social Media Accounts").

42.     Defendants also filed an Application (Serial No. 87/839574) with the
United States Patent and Trademark Office ("USPTO") to register the MINDFUL
ENTREPRENEUR mark for use with the following services: "*Advertising, marketing
and promotional services; Promotion of advertising space and time on program on audio
and video podcast; Online distribution of advertising, marketing, and promotional
material; Strategic business and marketing consulting services; Business assistance
services; Business consultancy and advisory services; Business analysis and research
and information services*" in Class 35 and "*Providing on-line publications in the nature
of e-books in the fields of personal goals, business goals, mindfulness, business
entrepreneurship, productivity, personal development, business strategy, work-life
balance, and wellness, not downloadable; Production of online audio programs, namely,
audio podcasts; Production of online video programs, namely, video podcasts; Audio and
video editing; Entertainment services, namely, providing podcasts in the fields of
personal goals, business goals, mindfulness, business entrepreneurship, productivity,
personal development, business strategy, work-life balance, and wellness; Providing on-
line videos featuring information in the fields of personal goals, business goals,*

*mindfulness, business entrepreneurship, productivity, personal development, business strategy, work-life balance, and wellness, not downloadable ; Workshops, seminars, and conferences in the fields of personal goals, business goals, mindfulness, business entrepreneurship, productivity, personal development, businesses strategy, work-life balance, and wellness; Publication of electronic books; Educational services, namely, conducting classes, seminars, conferences, workshops in the field of personal goals, business goals, mindfulness, business entrepreneurship, productivity, personal development, business strategy, work-life balance, and wellness and distribution of course and educational materials in connection therewith*" in Class 41.

43.     Defendants' application was thereafter moved to the USPTO's Supplemental Register, which EMI did not have the opportunity to oppose, and eventually it registered (Reg. No. 5,557,533) (the "Infringing Entrepreneur Registration").

44.     In light of EMI's renown, online presence, and long history of providing goods and services under the ENTREPRENEUR Mark, EMI is concerned that consumers will likely be confused and mistakenly believe that Defendants and their goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with, EMI.

45.     Defendants will thus reap the benefits of EMI's reputation and goodwill based on this consumer confusion, to EMI's detriment.

46.     EMI has attempted to reconcile its concerns with Defendants, including by a letter on June 11, 2018 and additional follow-up correspondence.  Defendants, however,

have failed to respond to any of EMI's correspondence and continue to use the Infringing

Entrepreneur Mark.

47.     Given Defendants' failure to respond to EMI's correspondence, and

Defendants' continuing use of the mark, EMI brought this suit to fully litigate and resolve

the trademark issues between the parties.

## EMI Is Harmed By Defendants' Continuing
## Infringement & Unlawful Conduct

48.     Defendants' continued use of the confusingly similar Infringing

Entrepreneur Mark in commerce violates EMI's valuable intellectual property rights in

the EMI Marks and EMI Registrations, and Defendants' knowing, intentional, willful,

and malicious use of this mark is damaging to EMI and EMI's property.

49.     Defendants have used the Infringing Entrepreneur Mark to unfairly usurp

and capitalize on the value and goodwill of the EMI Marks and EMI Registrations,

particularly the ENTREPRENEUR Mark.  Defendants are aware of EMI's strong

trademark rights and reputation in the marketplace, but nevertheless, use the Infringing

Entrepreneur Mark to profit from the goodwill associated with the EMI Marks and EMI

Registrations.

50.     Defendants have intentionally and knowingly capitalized off of confusion

between EMI's mark and the MINDFUL ENTREPRENEUR mark, including by

providing content almost identical to EMI's content, as described above.

51.     Due to Defendants' continuing willful infringement and unlawful conduct,

EMI is now forced to bring this Complaint to protect its valuable and longstanding

intellectual property rights.  EMI had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

52.     EMI's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants.  The public interest is best served by granting EMI's requested relief against Defendants.

### FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

53.     EMI incorporates by reference the factual allegations set forth above.

54.     EMI owns the EMI Marks and the EMI Registrations.  The trademarks reflected in the EMI Registrations are strong and distinctive and designate EMI as the source of all products and services advertised, marketed, sold, or used in connection with the EMI Marks.  In particular, the ENTREPRENEUR Mark has been used for over forty years and has been recognized by federal courts as a strong and distinctive mark.

55.     EMI is the senior user of the EMI Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Entrepreneur Mark.

56.     Defendants do not have authorization, license, or permission from EMI to market and sell their products and services under the Infringing Entrepreneur Mark, which is confusingly similar to the EMI Marks, including the ENTREPRENEUR Mark, and which is used by Defendants with products and services that are identical and/or closely related to the particular products and services associated with the EMI Marks,

particularly the ENTREPRENEUR Mark.

57.    Defendants were aware of the EMI Marks, and in particular the ENTREPRENEUR Mark, as Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications to Defendants about this matter.  Yet, Defendants continued to use their infringing mark.  Thus, Defendants' unauthorized use of the confusingly similar Infringing Entrepreneur Mark was and is knowing, intentional, and willful.

58.    As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

59.    Defendants' actions therefore constitute trademark infringement.

60.    Unless an injunction is issued enjoining any continuing or future use of the confusingly similar Infringing Entrepreneur Mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm EMI.

61.    Defendants' activities have caused and will continue to cause irreparable harm to EMI, for which it has no adequate remedy at law, because: (i) the EMI Marks, and in particular the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and is harming and will continue to substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to

15 U.S.C. § 1116(a).

62.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendants' conduct.

63.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

64.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EMI is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

65.     EMI incorporates by reference the factual allegations set forth above.

66.     The EMI Marks, and in particular the ENTREPRENEUR Mark, are strong and distinctive and designate EMI as the source of all goods and services advertised, marketed, sold, or used in connection with those marks.  In addition, by virtue of EMI's decades of use of the ENTREPRENEUR Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under that mark and the EMI Marks, the EMI Marks, including in particular the ENTREPRENEUR Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of Virginia, and the United States associate the EMI Marks with a single source of products and services.

67.     EMI is the senior user of the EMI Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Entrepreneur Mark.

68.     Defendants were aware of the EMI Marks, and in particular the ENTREPRENEUR Mark, because Defendants were on constructive notice based on EMI's longstanding federal registrations, as well as on actual notice based on EMI's numerous communications to Defendants about this matter.  Yet, Defendants continued to use their infringing mark.  Thus, Defendants' unauthorized use of the confusingly similar Infringing Entrepreneur Mark was and is knowing, intentional, and willful.

69.     Through its use of the confusingly similar Infringing Entrepreneur Mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression that EMI somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar Infringing Entrepreneur Mark.

70.     In fact, there is no connection, association, or licensing relationship between EMI and Defendants, nor has EMI ever authorized, licensed, or given permission to Defendants to use the confusingly similar Infringing Entrepreneur Mark in any manner.

71.     Defendants' use of the confusingly similar Infringing Entrepreneur Mark will likely cause confusion as to the origin and authenticity of Defendants' website, and related goods and services and will likely cause others to believe that there is a relationship between Defendants and EMI when there is, in fact, not.

72.     As a direct and proximate result of Defendants' wrongful conduct, EMI has been and will continue to be damaged.

73.     Defendants' actions thus constitute false designation of origin and unfair competition.

74.     Defendants' activities have caused, and will continue to cause, irreparable harm to EMI, for which it has no adequate remedy at law, in that: (i) the EMI Marks, including the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EMI's goodwill and customer relationships and will substantially harm EMI's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EMI, are continuing.  Accordingly, EMI is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

75.     Pursuant to 15 U.S.C. §1117(a), EMI is entitled to an order: (i) requiring Defendants to account to EMI for any and all profits derived from its actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EMI that were caused by Defendants' conduct.

76.     Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), EMI is therefore entitled to an award of treble damages against Defendants.

77.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EMI is entitled to an award of attorneys' fees and costs.

## <u>PRAYER</u>

WHEREFORE, EMI prays for the following relief:

A.     An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

      i.      cease all use and never use the MINDFUL ENTREPRENEUR mark, the EMI Marks, or any other mark likely to cause confusion with the EMI Marks, including any misspelling or variation of those Marks, in, on or with any products or services, or in connection with the, advertising, marketing or other promotion, distribution, offering for sale, or sale, of any products or services, including on the Social Media Accounts, and the *www.methriving.com* website;

      ii.      never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner associated or connected with EMI, or are licensed, approved, or authorized in any way by EMI;

      iii.      never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or

any of their products or services, are related to, authorized, or
sponsored by EMI;

iv.      never register any domain name that contains any of the EMI Marks
or any misspelling or variation of those Marks, or any domain name
confusingly similar to any of the EMI Marks;

v.      transfer to EMI all domain names in the Enjoined Parties'
possession, custody, or control that include the word "entrepreneur"
or any misspelling or variation thereof, are otherwise confusingly
similar to or contain any of the EMI Marks, or were used in
connection with the Infringing Entrepreneur Mark, including the
*www.methriving.com* domain name;

vi.      cease all use of the *www.methriving.com* website and domain name
until all uses of the MINDFUL ENTREPRENEUR mark have been
removed;

vii.      cease all use of the Social Media Accounts and any similar accounts
or social media websites, and never register any social media
account that contains the MINDFUL ENTREPRENEUR mark, any
of the EMI Marks, or any misspelling or variation of those Marks, or
any other social media account confusingly similar to any of the
EMI Marks;

viii.      transfer to EMI the Social Media Accounts, including all such
accounts in Defendants' possession, custody, or control that include

the word "entrepreneur" or any misspelling or variation thereof, that

were used to promote the MINDFUL ENTREPRENEUR mark, or

that are otherwise confusingly similar to or contain any of the EMI

Marks;

ix.    never unfairly compete with EMI in any manner whatsoever, or

engage in any unfair, fraudulent, or deceptive business practices that

relate in any way to the production, distribution, marketing, and/or

sale of products and services bearing any of the EMI Marks or any

other mark likely to cause confusion with the EMI Marks, including

any misspelling or variation of those Marks; and

x.    never again apply for or seek to register the MINDFUL

ENTREPRENEUR mark, any of the EMI Marks, or any other mark

likely to cause confusion with the EMI Marks, including any

misspelling or variation of those Marks.

B.    An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to

file with the Court and serve upon EMI's counsel, within thirty (30) days after service of

the order of injunction, a report in writing under oath setting forth in detail the manner

and form in which the Enjoined Parties have complied with the injunction.

C.    To give practical effect to the Court's injunction, the social networking

service or entity (*e.g.*, YouTube) related to any of the social media accounts subject to

this Order shall, within fourteen (14) days of receipt of the Order, transfer, disable, or

otherwise cancel those subject accounts at EMI's request if the Enjoined Parties have not

already done so.

D.     To give practical effect to the Court's injunction, an order that the Registry or Registrar for any of the foregoing domain names shall, within fourteen (14) days of receipt of the Order, transfer or otherwise assign those subject domain names to EMI if the Enjoined Parties have not already done so, and (at EMI's request) cancel, disable, or otherwise remove all content from the related websites (including the *www.methriving.com* website) and continue to do so until the MINDFUL ENTREPRENEUR mark/term no longer appears therein.

E.     An order, pursuant to 15 U.S.C. §1119, directing the USPTO to cancel the Infringing Entrepreneur Registration.

F.     An order finding that, by the acts complained of above, Defendants have infringed EMI's federally-registered trademarks in violation of 15 U.S.C. § 1114.

G.     An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

H.     Pursuant to 15 U.S.C. § 1117(a), an order awarding EMI its actual damages, as well as all of Defendants' profits or gains of any kind from its acts of trademark infringement, false designation of origin, and unfair competition, including enhancement of those damages.

I.     An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding EMI its reasonable attorneys' fees.

J.     An order pursuant to 15 U.S.C. § 1117(a) awarding EMI all of its costs,

disbursements, and other expenses incurred due to Defendants' unlawful conduct.

      K.        An order awarding EMI pre-judgment interest.

      L.        An order awarding EMI such other relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated:  February 1, 2019

          Respectfully submitted,

          LATHAM & WATKINS LLP

          By:  /s/ Stephen P. Barry
          Stephen P. Barry (VA Bar No. 81839)
          LATHAM & WATKINS LLP
          555 Eleventh Street, NW, Suite 1000
          Washington, DC 20004
          202.637.2200 / 202.637.2201 (Fax)
          *stephen.barry@lw.com*

          Perry J. Viscounty (*pro hac vice* to be filed)
          LATHAM & WATKINS LLP
          650 Town Center Drive, 20th Floor
          Costa Mesa, CA  92626-1925
          714.540.1235 / 714.755.8290 Fax
          *perry.viscounty@lw.com*

          - and -

          Jennifer L. Barry (*pro hac vice* to be filed)
          Patrick C. Justman (*pro hac vice* to be filed)
          LATHAM & WATKINS LLP
          12670 High Bluff Drive
          San Diego, CA  92130
          858.523.5400 / 858.523.5450 Fax
          *jennifer.barry@lw.com*
          *patrick.justman@lw.com*

          *Attorneys for Plaintiff*
          *ENTREPRENEUR MEDIA, INC.*